ELKHORN COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.[1]

WILLIAM C. ATWATER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DAVID H. ATWATER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN J. ATWATER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET A. OLDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LENA C. HUTCHINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES P. HUTCHINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49064–49070. Promulgated January 28, 1936.

*John L. Steinbugler, Esq., Leo H. Hoffman, Esq.,* and *Robert W. Knox, Esq.,* for the petitioners.

*R. W. Wilson, Esq.,* and *Arthur Clark, Esq.,* for the respondent.

OPINION.

MATTHEWS: These proceedings, which have been consolidated, arise under section 280 of the Revenue Act of 1926 and involve a deficiency in income tax determined against the Elkhorn Coal & Coke Co., a corporation, for the year 1925 in the amount of $74,332.44, which

---

[1] Vacated by Board order of March 6, 1936, and re-referred to Division.

996

the respondent is seeking to collect from the petitioners as transferees of the assets of that corporation, which was dissolved under date of August 25, 1926.

This deficiency of $74,332.44, which is outstanding and unpaid, grows out of the respondent's determination that the Elkhorn Coal & Coke Co. made a profit of $567,787.99 on the transfer of certain assets for 1,000 shares of stock of the Mill Creek Coal & Coke Co., which stock was valued by the respondent at $720,710. The petitioners contend that this exchange of assets for stock constituted a tax-free reorganization, under the provisions of section 203 of the Revenue Act of 1926, and that no taxable gain was realized thereon by the Elkhorn Coal & Coke Co. Other questions raised by the parties herein will be answered, or their significance destroyed, by the determination of this principal issue. The petitioners have waived all issues involving the statute of limitations.

These proceedings were submitted upon the oral testimony of one witness with respect to the physical merger or consolidation of the operating properties of the Mill Creek Coal & Coke Co. and those of the Elkhorn Coal & Coke Co., and on a stipulation of facts which, together with exhibits thereto attached, is made a part of this report by reference.

The Elkhorn Coal & Coke Co. was organized under the laws of the State of West Virginia in 1889. It was actively and continuously engaged in coal mining from the date of its incorporation until December 31, 1925, after which date it did no business whatsoever. Its total capital stock issued and outstanding during December 1925 and until it was liquidated in 1926 was 7,540 shares of common stock. Its stockholders from prior to January 1925 to January 22, 1926, were as follows:

| Name: | Shares |
|---|---|
| William C. Atwater | 5 |
| William C. Atwater, Jr | 1,598 |
| John J. Atwater | 1,598 |
| David H. Atwater | 1,604 |
| Margaret A. Olds | 1,170 |
| Charles B. Smith | 143 |
| John L. Steinbugler | 5 |
| Charles P. Hutchins | 650 |
| Lena C. Hutchins | 741 |
| Jos. H. Spafford | 13 |
| Estate of W. H. Wheeler | 13 |
| Total shares issued and outstanding | 7,540 |

On December 9, 1925, there was organized under the laws of the State of Delaware a corporation known as Elkhorn Coal Co., which is one of the petitioners herein. On organization 10 shares were issued as qualifying shares and additional shares were issued until

on January 22, 1926, its total outstanding capital stock consisted of 7,540 shares of common stock.

Pursuant to a plan of reorganization and in accordance with the authority conferred by regular corporate action, as set forth in the minutes of the meetings of the stockholders and directors of the corporations, the Elkhorn Coal Co. assumed all the liabilities and acquired certain assets of the Elkhorn Coal & Coke Co. in exchange for 6,100 shares of stock, which were promptly distributed among the stockholders of the Elkhorn Coal & Coke Co. The only assets not thus conveyed to the Elkhorn Coal Co. were certain operating properties consisting of a mine, mining plant, and mining equipment located at Maybeury, West Virginia, which were retained by the Elkhorn Coal & Coke Co.

The Mill Creek Coal & Coke Co., organized under the laws of the State of West Virginia in 1891, was engaged in the business of mining coal on certain tracts of land which were contiguous to the operating properties of the Elkhorn Coal & Coke Co. at Maybeury, West Virginia, referred to in the preceding paragraph. The Mill Creek Coal & Coke Co. was desirous of acquiring these properties in order that a physical merger might be effected whereby all the properties could be more economically operated as a single mine. On December 31, 1925, pursuant to a plan of reorganization and in accordance with the authority conferred by the regular corporate action of both companies, the Elkhorn Coal & Coke Co. conveyed these operating properties to the Mill Creek Coal & Coke Co. in exchange for 1,000 shares of common stock, which constituted 25 percent of the total outstanding capital stock of the Mill Creek Coal & Coke Co. After this transfer the Elkhorn Coal & Coke Co. had no assets except these 1,000 shares of stock of the Mill Creek Coal & Coke Co. which had a fair market value on December 31, 1925, of $550,000.

On January 22, 1926, the remaining 1,440 shares of stock of the Elkhorn Coal Co. were issued in exchange for all of the capital stock of the Elkhorn Coal & Coke Co., which shares were received by the stockholders of the Elkhorn Coal & Coke Co. pro rata in proportion to their stock holdings. These 1,440 shares of stock had a fair market value on that date of $224.01 per share. Thereupon the Elkhorn Coal Co. became the sole stockholder of the Elkhorn Coal & Coke Co. and those individuals who had owned 7,540 shares of common stock of the Elkhorn Coal & Coke Co. owned in the same proportions 7,540 shares of common stock of the Elkhorn Coal Co. On this same date the Elkhorn Coal Co., the then owner of 100 percent of the stock of the Elkhorn Coal & Coke Co., caused the Elkhorn Coal & Coke Co. to transfer to it the 1,000 shares of stock of the Mill Creek Coal & Coke Co., which had been received in

exchange for the above-described operating properties and which had a fair market value in excess of the deficiency at issue herein, and proceeded to dissolve the Elkhorn Coal & Coke Co. The Elkhorn Coal & Coke Co. was completely liquidated and its certificate of dissolution was issued on or about August 25, 1926.

There is no question that the transactions between the Elkhorn Coal & Coke Co. and the newly organized Elkhorn Coal Co. resulted in no taxable gain. But the respondent has determined that the acquisition by the Mill Creek Coal & Coke Co. of those operating properties of the Elkhorn Coal & Coke Co. which were located at Maybeury, West Virginia, in exchange for stock was not a reorganization within the meaning of the language used in section 203 (h) (1) (A) of the Revenue Act of 1926, reading as follows: "the acquisition by one corporation of * * * substantially all the properties of another corporation"; and seeks to collect the asserted deficiency from the petitioners as transferees of the assets of the Elkhorn Coal & Coke Co.

Statutory provisions which are applicable hereto are set out in the margin.[1]

It is argued by the respondent that the several steps taken by the three corporations prior to the dissolution of the Elkhorn Coal & Coke Co., as set out in the minutes and which we have summarized above, should not be viewed separately but as a part of one continuous, unified plan; that the Elkhorn Coal Co. was created merely to hold those assets of the Elkhorn Coal & Coke Co. which were not desired by the Mill Creek Coal & Coke Co., which assets were retained by the successor corporation in such manner that the beneficial ownership therein remained unchanged; and that the transaction with the Mill Creek Coal & Coke Co. did not constitute a transfer of all the property of the Elkhorn Coal & Coke Co. but actually amounted to a sale of only a part of its property.

We are of the opinion that the respondent's determination can not be sustained. The instant case falls squarely within the ruling laid

---

[1] RECOGNITION OF GAIN OR LOSS FROM SALES AND EXCHANGES.

Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\* \* \* \* \* \* \*

(b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

down in *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378, affirming 76 Fed. (2d) 797, which had reversed this Board's decision reported at 28 B. T. A. 591, in which case the Supreme Court held, upon facts practically on all fours with those contained herein, that there was a reorganization within the provisions of the statute. Although it was argued on behalf of the Commissioner that in construing section 112 (i) (1) of the Revenue Act of 1928, the provisions of which are identical with the provisions of the corresponding section of the Revenue Act of 1926, clause (A) should be narrowly interpreted so as to necessitate something nearly akin to technical merger or consolidation, the Court specifically held that clause (B) was not intended to modify clause (A) or any part thereof. It may be noted that in the *Minnesota Tea Co.* case a large part of the consideration was paid in cash and the transferor was not dissolved (which is not true in the instant proceedings), but these facts did not change the conclusion that the transaction involved therein partook of the nature of a reorganization and did not amount to a sale out of which a taxable profit arose. The Supreme Court has succinctly stated that to be within the exemption allowed by the statute in the case of a reorganization the transferor must acquire a definite and material interest in the affairs of the transferee, which interest must represent a substantial part of the value of the transferred assets. Clearly this test, when applied to the facts herein, necessitates a ruling adverse to the position of the respondent on the main issue.

The notices of deficiency indicate that other adjustments have been made by the respondent with respect to the income for 1925 which was reported by the Elkhorn Coal & Coke Co. and a recomputation will be made in accordance with this opinion. The parties have stipulated that the net income should be reduced by minimum royalties which were disallowed by the respondent in the amount of $4,000.

*Judgment will be entered under Rule 50.*